STRANAHAN *v.* GENESEE COUNTY FARMERS' MUTUAL FIRE INSURANCE CO.

1. EVIDENCE — SIMILAR ACTS AT ANOTHER TIME — EXCEPTIONS TO GENERAL RULE.

   It is the general rule that evidence that a person has done an act at a particular time is not admissible to prove that he has done a similar act at another time, but there are well-recognized exceptions to the rule: in criminal cases where intent is involved, and in civil cases involving fraudulent transactions.

2. SAME—TEST AS TO ADMISSIBILITY OF SIMILAR ACTS—REMOTENESS—PRESUMPTIONS.

   The test as to whether evidence of a similar act is admissible is whether the earlier act was sufficiently near in point of time to permit a presumption to arise therefrom that the motive which it is sought to establish then existed.

[1]Evidence, 22 C. J. § 835; [2]Id., 22 C. J. § 836.

3. SAME—EVIDENCE OF SIMILAR ACTS PROPERLY REJECTED WHERE TOO REMOTE.

In an action on a fire insurance policy on plaintiff's farm house, an offer by defendant to prove the burning of plaintiff's barn about 20 months previously under suspicious circumstances, thereby showing that he had a motive in burning his farm buildings, was properly rejected; said proof being too remote in point of time.

4. APPEAL AND ERROR—INSTRUCTIONS—MISCARRIAGE OF JUSTICE.

In an action on a fire insurance policy on plaintiff's farm house, where the insurer attempted to show that plaintiff had a motive in burning both the barn and the house, an instruction in relation to the value of the farm with the buildings on as compared to what it would sell for after the buildings were burned and insurance collected, to the effect that this would be true of any farm, and that plaintiff was not in a class by himself, although unfortunate, *held*, not reversible error, where it cannot be said to have resulted in a miscarriage of justice (3 Comp. Laws 1915, § 14565).

Error to Genesee; Black (Edward D.), J. Submitted January 10, 1928; resubmitted March 27, 1928. (Docket No. 132.) Decided April 3, 1928.

Assumpsit by Willis L. Stranahan against the Genesee County Farmers' Mutual Fire Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*George W. Cook,* for appellant.

*Pulver & Bush* and *Roy E. Brownell,* for appellee.

SHARPE, J. Plaintiff is a resident of the village of Flushing, in Genesee county. A house on a farm owned by him, a few miles from the village, was destroyed by fire on October 17, 1925. It was insured in the defendant company. This action was brought to recover on the policy. Plaintiff had

---

[4]Appeal and Error, 4 C. J. § 3202.

verdict and judgment for $5,177.78.   Defendant seeks review by writ of error.

1. The record discloses that the barn on said farm, insured in the defendant company, burned in February, 1924, and that, about a week before the house burned, a fire occurred in the attic, which was extinguished.   An assignment is based upon the refusal of the court to admit certain proofs, of which it is conceded the defendant should have the same benefit as though the witnesses had been called and interrogated relative thereto.   The offer was thus stated by its counsel:

"Now, I propose to prove, if the court please, that prior to the burning of the barn, that oats were taken away, hay was taken away, lumber was removed from the barn, his best harness was taken away; that the fire did not originate where he said it did; it did not originate from the lantern that was placed where he said it was placed, but the fire was set or originated in the north end of the barn, that there was a heavy wind, and that it was sweeping to the south, and that he was the only person around there that could have caused the conflagration; that some of the best tools were out of the barn and in the yard at the time of the fire; that the stock was all let out in the orchard, had been out there for some considerable time, and the poorer tools, the worthless tools, were still in the barn.   Now, that is what I propose to prove about that.   Of course, there are a whole multitude of little things about this case that may have slipped my mind, but those are the essentials."

This offer was made at the opening of defendant's case.   Its counsel had theretofore been permitted to cross-examine plaintiff at length relative to the facts incident to the burning of the barn.   It is the general rule that evidence that a person has done an act at a particular time is not admissible to prove that he has done a similar act at another time.   There are well-recognized exceptions to this rule, however.   In certain criminal cases in which intent is involved prior

acts of a similar character may be shown, and, in civil cases where misrepresentations are claimed, other fraudulent transactions of a similar nature may be proven.

The purpose of the proof here offered was to establish the motive which actuated the plaintiff in the burning of the buildings on his farm. Defendant sought to show that the plaintiff had in mind that, after the buildings were burned and the insurance secured, he could dispose of his farm to better advantage than with the buildings upon it. To make such testimony admissible, it must appear that the facts were—

"sufficiently significant in character, and *sufficiently near in point of time,* to afford a presumption that the element sought to be established existed at the time of the commission of the offense charged." *Commonwealth* v. *Bradford,* 126 Mass. 42.

In *State* v. *Graham,* 121 N. C. 623 (28 S. E. 409), where similar proof was offered, it was said:

"It is when the transactions are so connected or contemporaneous as to form a continuing action that evidence of the collateral offense will be heard to prove the *intent* of the offense charged."

In *Meister* v. *People,* 31 Mich. 99, 108, the facts are thus stated:

"The fire was on the 22d of June. Proof was given, under exceptions, that about a month before the fire, three conversations were had between Leizer Meister and John Wagner and John Nugent (at one of which William Meister was present), in which Leizer desired to get them to burn the property between the 1st and 10th of June, between Saturday night and Monday morning, when the folks would be away, and consulted as to the best way of burning. This testimony was objected to, as tending to show another offense, under a different statute."

The court held that this evidence—

"was admissible as tending to show a purpose to burn the property, existing *not very long before the fire,* and bearing on the probabilities."

The test seems to be whether the earlier act was sufficiently near in point of time to permit a presumption to arise therefrom that the motive which it is sought to establish then existed. The fire which destroyed the barn occurred in February, 1924. The house burned on October 17, 1925, nearly 20 months thereafter. During this time the plaintiff had erected a new barn somewhat smaller than the old one. It does not appear that either building was insured for more than its value. The only proof tending to justify a finding of the motive claimed was the testimony of farmers that the farm, stripped of the buildings, would sell for more money than with them on if the insurance was collected.

Plaintiff's counsel urge that on cross-examination he admitted all the facts which defendant sought to prove. There is some force in this contention. But, in our opinion, the proof offered was too remote in point of time to justify our holding that the trial court abused his discretion in rejecting it.

2. Error is assigned upon the following extract from the charge:

"Now there has been testimony introduced by the defendant in this case to show the value of the property with the buildings on, and what the value of the farm would be with the buildings removed or burned off. I charge you, gentlemen of the jury, under the testimony of these men, that would be true of any man's farm that had the buildings on, that the insurance would be more than the buildings would sell for after the buildings were built, so Mr. Stranahan is not in a class by himself. According to the testimony introduced here, and the arguments made, he is in a class with people with that kind of insurance, so that of itself would not point to Mr. Stranahan any more

than anybody else who had buildings insured in that way."

One of the witnesses who estimated the value of the farm with and without the buildings stated:

"There is not much demand for land without buildings. It would move much slower on the market. The average man who buys a farm buys one with buildings and not without buildings."

Another said:

"I figured the difference in the value of the land without the buildings. I could not say as to what the value of the barn was. I did not fix any value on the house."

Another testified:

"I have been in Mr. Stranahan's house and barn, but never paid any attention to them. I don't know what it would cost to build the barn and the house. The buildings are worth something, but you can buy those farms out there for $125 an acre."

There was other testimony of similar import. The instruction as given was unfortunate. We are unable to say after an examination of the entire record that it resulted in a miscarriage of justice. 3 Comp. Laws 1915, § 14565.

The judgment is affirmed.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, MCDONALD, and POTTER, JJ., concurred.