STATE v. LILLIAN P. RIXON.
STATE v. ALVAH G. PHELPS.[1]

June 13, 1930.

Nos. 28,081, 28,082.

[1]Reported in 231 N. W. 217.

George W. Peterson, for defendant Rixon.

P. S. Olsen, for defendant Phelps.

Henry N. Benson, Attorney General, William K. Montague, Assistant Attorney General, and George L. Angstman, County Attorney, for the state.

Holt, J.

Defendants were indicted for arson and each moved to quash the indictment on the ground that they had been compelled to testify against themselves before the grand jury. The motions were denied; but, deeming the matters involved doubtful and important, the trial court certified to this court two questions for decision. We need answer but one of the questions certified, for that will dispose of both cases. While the record presented in the Phelps case is not the same as in the Rixon case, it is sufficiently similar in respect to the one question to be answered to dispose of both cases.

The question is: "Was defendant compelled to be a witness against herself?" That is, before the grand jury. The state admits that this occurred: A dwelling in the possession of Phelps, at Ogilvie, burned. It was heavily insured, part of the insurance being payable to his sister, defendant Rixon, to secure an alleged debt. The state fire marshal by his deputies investigated the fire and subpoenaed defendants as witnesses, and separate hearings were had at which defendants were sworn and persistently cross-examined by two deputies of the marshal. This examination was taken by a competent stenographic reporter and transcribed. The transcripts so made were placed before the grand jury, which returned

the indictment. It also appears that one Harrington, an associate in business and friend of Mrs. Rixon, was separately indicted for participation with defendants in burning the said dwelling. From these transcripts it clearly appears that it was not an investigation for the purpose of ascertaining whether the fire was set or not, or to discover who might possibly have set it, if not accidental. The whole examination was conducted by the deputies on the declared assumption that defendants were guilty thereof. They were the accused, precisely as if under arrest charged with the arson. Defendants were warned that incriminating questions need not be answered. However all questions asked but one were answered without claiming the constitutional protection. It may be said that no answer tended to incriminate. But the vicious part of the transcript is the charges and supposed facts contained in the questions. This testimony was taken by the fire marshal deputies under the provisions of G. S. 1923 (1 Mason, 1927) §§ 5956-5958. The fire marshal is thereby permitted to furnish the prosecuting officer with a copy of the transcript of the testimony taken; but the statute does not provide that he give it to the grand jury as a basis for indicting the person who was accused of the arson and compelled by subpoena to give the testimony. And we do not believe that the statute was ever intended for such use. The transcript of Rixon's examination vindicates the characterization of this law as "unusual, drastic, and inquisitorial," made in State ex rel. Robertson v. Steele, 117 Minn. 384, 385, 135 N. W. 1128, Ann. Cas. 1913D, 343. Its use should not be extended for purposes other than those therein designated. As used in the instant cases, it amounts to the same thing as compelling defendants to testify in person before the grand jury where the fire marshal would conduct the examination and by his questions assert their guilt of the very crime under investigation.

It is settled law in this state that where a grand jury by subpoena compels the accused to attend and testify concerning his connection with the crime under investigation an indictment returned by such jury against such accused will be quashed, because in violation of our constitutional guaranty that no person "shall be compelled in any criminal case to be a witness against himself" (art. 1, § 7).

State v. Froiseth, 16 Minn. 260 (296); State v. Gardner, 88 Minn. 130, 92 N. W. 529. This guaranty courts should zealously guard. State ex rel. Sandquist v. District Court, 144 Minn. 326, 175 N. W. 908. The cases at bar do not come under the exception which defeated the motion to quash in State v. Hawks, 56 Minn. 129, 57 N. W. 455; State v. Mason, 152 Minn. 306, 189 N. W. 452. The transcripts of defendants' testimony placed before the grand jury contain a direct accusation against them of the crime.

Cases other than those cited in State v. Froiseth, 16 Minn. 260 (296); and State v. Gardner, 88 Minn. 130, 92 N. W. 529, tending to support the position we take, that the use of defendants' testimony was compelling them to be witnesses against themselves before the grand jury where they were charged with the crime for which they were indicted, are: Tuttle v. People, 33 Colo. 243, 79 P. 1035, 70 L. R. A. 33, 3 Ann. Cas. 513; Boone v. People, 148 Ill. 440, 36 N. E. 99; State v. Pence, 173 Ind. 99, 89 N. E. 488, 25 L.R.A.(N.S.) 818, 140 A. S. R. 240, 20 Ann. Cas. 1180; State v. Bramlett (Miss.) 47 So. 433; State v. Naughton, 221 Mo. 398, 120 S. W. 53; People v. Mondon, 103 N. Y. 211, 8 N. E. 496, 57 A. S. R. 709; People v. Bermel, 71 Misc. 356, 128 N. Y. S. 524; State v. Smith (S. D.) 228 N. W. 240. The Missouri and South Dakota cases contain very exhaustive discussions of the subject. On the other hand, the state cites in support of its position People v. Mitchell, 94 Cal. 550, 29 P. 1106; Commonwealth v. Bradford, 126 Mass. 42; State v. Duncan, 78 Vt. 364, 63 A. 225, 4 L.R.A.(N.S.) 1144, 112 A. S. R. 922, 6 Ann. Cas. 602; Regina v. Coote, 12 Cox, Crim. Cas. 557. To these we may add State v. Lloyd, 152 Wis. 24, 139 N. W. 514, Ann. Cas. 1914C, 415. It may be said that in the Duncan case, 78 Vt. 364, 63 A. 225, 4 L.R.A.(N.S.) 1144, 112 A. S. R. 922, 6 Ann. Cas. 602, it does not appear that when defendant was called as a witness before the grand jury he was accused or his connection with the crime was being considered. In the Bradford case, 126 Mass. 42, the decision was put on the proposition that when he gave his testimony there was nothing to show that he was proceeded against criminally. In the Lloyd case, 152 Wis. 24, 139

N. W. 514, Ann. Cas. 1914C, 415, the information was attacked on the ground that it was based on testimony given by defendant under a statute similar to ours relating to investigation of fires of suspected incendiary origin.

There is perhaps a distinction to be made between an information and an indictment, in that an information originates from a prosecuting attorney who is presumed to know enough to reject the accusations and charges contained in the questions asked an accused and predicate the information only upon proper legal evidence. Of course in the trial of any criminal case a defendant may be confronted by testimony voluntarily given in some other legal proceeding or by voluntary statements made out of court. State v. Newman, 127 Minn. 445, 149 N. W. 945; State v. Mamer, 139 Minn. 265, 166 N. W. 345.

To this question certified: "Was the defendant compelled to be a witness against herself?" our answer is yes; and the cases against the defendants Rixon and Phelps are remanded with directions to quash the indictment.